```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 04, 2024
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA,

                      18-CR-033 (KMW)
                      22-CV-8024 (KMW)

        -against-                      **OPINION & ORDER**

PAI YANG,
               Petitioner-Defendant.
-----------------------------------------------------------X

KIMBA M. WOOD, United States District Judge:

Petitioner Pai Yang, proceeding *pro se*, moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on the basis of ineffective assistance of counsel. (Pet'r's Mot., ECF No. 84.) The Government opposes Yang's motion. (Gov't Opp'n, ECF No. 86.) For the reasons below, Yang's motion is DENIED.

### BACKGROUND

Yang was an international money launderer. Beginning in as early as September 2016, the Drug Enforcement Agency ("DEA") discovered that Yang was holding himself out as an international money launderer with co-conspirators in North and South America, Europe, Asia, and Australia. (Presentence Investigation Report ("PSR") ¶¶ 10–11, ECF No. 50.) In February 2017, an undercover law enforcement officer told Yang that he or she was a narcotics trafficker with $3.5 million in U.S. currency in Australia that he or she wanted available in New York. (*Id.* ¶ 12.) Yang stated that he had many clients involved in narcotics trafficking who wanted money moved, and that he could move the undercover law enforcement officer's money for a 10% fee. (*Id.*) Undercover law enforcement told Yang repeatedly that they were involved in narcotics

1

trafficking, and that the money that Yang was laundering was used in furtherance of narcotics trafficking. (*Id.* ¶ 13.)

Yang laundered funds for undercover law enforcement on several occasions. On two occasions in April 2017, the undercover law enforcement officer provided Yang's associates $100,000 Australian dollars in Melbourne, Australia, and Yang then provided that money—converted into United States dollars, less his 10% fee—to undercover law enforcement in New York.[1] (*Id.* ¶ 12.) In May and July 2017, Yang and his associates received $150,000 dollars from undercover law enforcement in Florida, and then provided that amount in cash—after subtracting a fee—to undercover law enforcement in New York.[2] (*Id.* ¶ 14–15.)

Undercover law enforcement also provided Yang with a currency-counting machine, which was equipped with tracking and transmitting equipment. (*Id.* ¶ 18.) During a two-week period in July and August 2017, Yang used the currency-counting machine in his apartment, and the machine counted over $400,000 in non-Government funds.[3] (*Id.* ¶ 18; Gov't Opp'n at 2.)

Yang was charged in an Indictment with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) ("Count One"); and promotional money laundering, in violation of 18 U.S.C. § 1956(a)(3)(A) ("Count Two"). (PSR ¶¶ 1–3.) The Indictment contained a forfeiture allegation, which stated that Yang had to forfeit "any and all property, real and personal, involved in said offenses, or any property traceable to such property." (Indictment ¶ 4, ECF No. 12; Gov't Opp'n at 3.)

---

[1] Yang and undercover law enforcement communicated via WhatsApp, a messaging application, regarding their agreement to launder funds from Australia to the United States. (*Id.* ¶ 17.)
[2] Yang traveled frequently, including to Australia and Florida. (*Id.* ¶ 19.)
[3] In addition to the conduct described above, Yang held bank accounts in which he frequently deposited and quickly withdrew large sums of cash. (*Id.* ¶ 20.)

On November 20, 2018, Yang appeared before a Magistrate Judge and pleaded guilty to Count Two pursuant to a plea agreement with the Government. (PSR ¶ 5.) During his plea allocution, Yang swore under oath that he had received a copy of his indictment, that it was translated for him, and that he had an opportunity to discuss the indictment with his attorney. (Plea Tr. at 4:11–15, 7:12–20, ECF No. 47.)

The Magistrate Judge proceeded to describe what the Government would have to prove beyond a reasonable doubt to establish Yang's guilt as to Count Two, if the case proceeded to trial:

> THE COURT: Do you understand that in order to establish your guilt at trial, the government would have to prove the following elements beyond a reasonable doubt: First, that you conducted a financial transaction; [s]econd, that the financial transaction involved property represented to be the proceeds of a specified unlawful activity, namely, the distribution of narcotics; and [t]hird, that you intended to promote the carrying on of the specified unlawful activity, that you *intended to conceal or disguise the nature, location, source, ownership or the control of property believed to be the proceeds of a specified unlawful activity.*

(*Id.* at 8:8–9:2 (emphasis added).) In describing the third element of the offense, the Magistrate Judge stated correctly that the Government would have to prove that Yang intended to promote the carrying on of the specified unlawful activity. The Magistrate Judge stated incorrectly, however, that the Government would also have to prove that Yang intended to conceal the nature or source of the proceeds of the specified unlawful activity, which was not an element of Count Two.

The Magistrate Judge proceeded to ask Yang questions to establish the factual basis for Yang's guilty plea:

> THE COURT: Can you tell us, please, what it is you did that makes you guilty of the offense charged in Count 2[?]
> THE DEFENDANT: [B]etween September 2016 to October 2017, I attempted to conduct financial transactions, knowing that the property

3

> involved were the proceeds of a drug sale that occurred in New York City, and I knew what I was doing was wrong when I did it.
> . . .
> THE COURT: The financial transactions involved, were you trying to disguise the source of the money involved?
> THE DEFENDANT: Conceal.
> THE COURT: You were trying to conceal the fact the money was the proceeds of drug transactions. Is that right?
> THE DEFENDANT: Yes, your honor.
> THE COURT: That was your intent in engaging in these transactions?
> THE DEFENDANT: Yes, your Honor.
> . . .
> THE COURT: [Y]ou believed the money to be the proceeds of narcotics transactions?
> THE DEFENDANT: Yes, your Honor.

(*Id.* at 16:1–17:15.) Next, Yang confirmed that he agreed to forfeit specific property identified in a forfeiture order attached to his plea agreement. (*Id.* at 19:25–21:24.) The Magistrate Judge accepted Yang's guilty plea after concluding that Yang was "aware of the nature of the charge against him and the consequences of the plea, and that the plea [was] knowing and voluntary and supported by an independent basis in fact[.]" (*Id.* at 22:3–12.)

On March 6, 2019, Yang appeared before the Court for sentencing. The Court sentenced Yang principally to 70 months' imprisonment. (Sent'g Tr. at 20:2–3, ECF No. 61; J. at 2, ECF No. 57.) In addition, the Court signed the parties' consent order of forfeiture. (Sent'g Tr. at 20:22–22:4.)

On July 28, 2021, the Second Circuit affirmed the Court's judgment. *United States v. Yang*, No. 19-734, 2021 WL 3177691, at *1 (2d Cir. July 28, 2021) (summary order). First, the Second Circuit held that although the Magistrate Judge erred in describing the elements of Count Two, Yang's substantial rights were not affected. *Id.* The Second Circuit reasoned that "the magistrate judge correctly instructed Yang that the government had to prove intent to promote the carrying on of the unlawful activity." *Id.* Second, the Second Circuit held that there was a

4

sufficient factual basis to support Yang's plea to Count Two. *Id.* at *2. Third, the Second Circuit declined to hear Yang's ineffective assistance of counsel claim. *Id.*

## LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255(a), a federal prisoner may move to "vacate, set aside or correct [his] sentence" if he believes his "sentence was imposed in violation of the Constitution or laws of the United States[.]" 28 U.S.C. § 2255(a). A petitioner may raise an ineffective assistance of counsel claim in a Section 2255 motion. *See Massaro v. United States*, 538 U.S. 500, 508–09 (2003). A Section 2255 motion requires a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b).

To succeed on an ineffective assistance of counsel claim, a petitioner must show that: (1) his "counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms," and (2) he was "prejudiced" by his counsel's deficient performance. *Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). When considering the first prong, courts "strongly presume[ ] [that counsel] rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment[.]" *Jackson v. Conway*, 763 F.3d 115, 152 (2d Cir. 2014) (citing *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011)). With respect to the second prong, courts consider whether there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 153 (quoting *Strickland*, 466 U.S. at 694). In the context of a guilty plea, a defendant must show a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

5

*Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005).

Courts need not conduct the *Strickland* inquiry in a specific order. Rather, "[i]f the defendant does not successfully establish either the deficient performance prong or the prejudice prong, the entire claim fails, and the remaining, unaddressed step becomes moot." *United States v. Akintola*, No. 21-CR-472, 2024 WL 1555304, at *7 (S.D.N.Y. Apr. 10, 2024) (Failla, J.) (citing *Strickland*, 466 U.S. at 697)).

## DISCUSSION

In his petition, Yang asserts that his counsel rendered constitutionally deficient representation in failing to: (1) advise Yang that he was pleading guilty to money laundering with the "intent to promote the carrying on of specified unlawful activity" pursuant to Section 1956(a)(3)(A) rather than money laundering with the intent "to conceal . . . the proceeds of specified unlawful activity" pursuant to Section 1956(a)(3)(B) and object when the Magistrate Judge incorrectly described the elements of the offense; (2) object to Yang's forfeiture amount at sentencing;[4] and (3) research or raise the affirmative defense of entrapment. (*See* Pet'r's Mot. at 2, 10–12; Gov't Opp'n at 7.) Before turning to the merits of Yang's motion, the Court addresses whether a hearing is necessary.

---

[4] The Court does not address Yang's claim that his counsel was ineffective in failing to object to Yang's forfeiture at sentencing because "§ 2255 may not be used to bring collateral challenges addressed solely to noncustodial punishments," including orders of forfeiture. *Kaminski v. United States*, 339 F.3d 84, 87 (2d Cir. 2003); *Pinhasov v. United States*, No. 14-CR-0670, 2018 WL 550611, at *3 (S.D.N.Y. Jan. 22, 2018) (Forrest, J.) (noting that Section 2255 may not be used as a vehicle to challenge noncustodial punishments "whether or not these claims are brought in conjunction to a challenge to a custodial sentence.").

**I.     No Hearing is Required to Rule on Yang's Section 2255 Motion**

Section 2255 requires a court to grant a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b). Based on the parties' submissions, the Court finds that no hearing is required.

Following Yang's submission of his present motion, the Court requested, and Yang consented to, a waiver of attorney-client privilege to obtain an affidavit from his counsel regarding his claims. (*See* Orders, ECF Nos. 91–92.) In his affidavit, Yang's counsel responds to Yang's ineffective assistance of counsel claims. (*See* Gov't Letter. Ex. 1 ("Henry Aff."), ECF No. 94-1.) The current record is sufficient to dispose of Yang's claims, as discussed *supra*.

Because additional testimony would not clarify or meaningfully add to the record, the Court concludes that the parties' written submissions are sufficient to decide Yang's motion, and that no hearing is required. This "avoid[s] the delay, the needless expenditure of judicial resources, the burden on trial counsel and the government . . . that would have resulted from a full testimonial hearing." *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001).

**II.    Yang's Counsel was not Ineffective in Connection with His Guilty Plea**

Yang asserts that his counsel was ineffective in connection with his guilty plea because he failed to: (1) advise Yang that he was pleading guilty to money laundering with the "intent to promote the carrying on of specified unlawful activity" rather than money laundering with the intent "to conceal . . . the proceeds of specified unlawful activity"; and (2) object when the Magistrate Judge incorrectly stated that the Government would have to prove that Yang intended

7

to conceal the proceeds of the specified unlawful activity, which was not an element of Count Two. (Pet'r's Mot. at 10, 12–17.)

The Court need not decide whether Yang's counsel's performance fell below an objective standard of reasonableness because Yang cannot demonstrate prejudice—that, but for counsel's alleged errors, Yang would not have pleaded guilty and would have insisted instead on going to trial.[5] "[I]n determining whether a defendant would have decided not to plead guilty and insisted instead on going to trial," courts consider several factors: "(a) whether the defendant pleaded guilty in spite of knowing that the advice on which he claims to have relied might be incorrect, (b) whether pleading guilty gained him a benefit in the form of more lenient sentencing, (c) whether the defendant advanced any basis for doubting the strength of the government's case against him, and (d) whether the government would have been free to prosecute the defendant on counts in addition to those on which he pleaded guilty." *Chhabra v. United States*, 720 F.3d 395, 408 (2d Cir. 2013).

Here, the factors do not support a claim that, but for counsel's alleged errors, Yang would not have pleaded guilty and would have insisted instead on going to trial. First, Yang gained

---

[5] Yang claims that he "wrongly believed that he could be convicted of the offense charged in the indictment [i]f he *merely* had the specific intent to 'conceal' what he believed to be [the] illegal source of the funds[.]" (Pet'r's Mot. at 13.) The Court notes that the record does not support Yang's claim. First, although Yang's counsel does not "recall a specific conversation with Mr. Yang about the difference between promotion and concealment under the statute," (Henry Aff. ¶ 13), Yang's counsel attests that he and Yang "discussed the charges against [Yang] and the requirement that the government must prove each allegation beyond a reasonable doubt[.]" (*Id.* ¶ 9.) In addition, Yang and his counsel reviewed the Indictment and PSR together, both of which specified that Yang was charged with promotional money laundering. (*Id.* ¶¶ 9, 23.) Second, in describing the elements of Count Two, the Magistrate Judge erred by instructing Yang that the Government had to prove that Yang intended to conceal the proceeds of the specified unlawful activity, rather than stating only that the Government had to prove that Yang intended to promote the specified unlawful activity. As the Government states, however, the Magistrate Judge's "additional language about an intent to conceal was not presented in the disjunctive, and therefore did not do away with the 'intent to promote' element" that the Magistrate Judge described correctly. (Gov't Opp'n at 9.) Yang confirmed that he understood that the Government would have to prove each element that the Magistrate Judge described beyond a reasonable doubt, including that he had an intent to promote the specified unlawful activity. (Plea Tr. at 8:16–9:6.)

significant benefits from the plea agreement.  The plea agreement dismissed Count One; awarded Yang full acceptance of responsibility credit; and limited the loss amount.  (*See* Gov't Opp'n at 10; PSR ¶¶ 37–38; Sent'g Tr. at 22:16–21.)  Second, the Government's case was strong.  Among other things, Yang: (1) held himself out as an international money launderer; (2) moved funds for undercover law enforcement after they had told him that they were involved in narcotics trafficking, and that the money that Yang was moving was used in furtherance of narcotics trafficking; and (3) used a currency-counting machine in his apartment that counted over $400,000 in non-Government funds.  (Gov't Opp'n at 10; PSR ¶¶ 10–23; Sent'g Tr. at 13:16–22, 14:10–16:22 (noting that "the defendant also held himself out as someone who had contact to international narcotics, kilo weight traffickers, and offered to the agents if they needed assistance having drugs moved, he could put them in touch with his contacts throughout the world.")).  Third, the Government would have been free to prosecute Yang on Count One.

Because Yang cannot demonstrate prejudice, his ineffective assistance of counsel claim with respect to his guilty plea fails.

### III. Yang's Counsel was not Ineffective in Failing to Research and Raise the Affirmative Defense of Entrapment

Yang next claims that his counsel was ineffective in failing to: (1) perform legal research with respect to the elements of entrapment and (2) raise it as an affirmative defense.  (Pet'r's Mot. at 2, 22–30.)  Yang's counsel was not ineffective in failing to research or raise the affirmative defense of entrapment.

Entrapment consists of two elements: "government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct."  *United States v. Cabrera*, 13 F.4th 140, 146 (2d Cir. 2021) (citation omitted).  Inducement occurs when the Government "initiated the crime."  *Id.* (quoting *United States v. Brand*, 467 F.3d 179, 190 (2d

9

Cir. 2006)). "A defendant is predisposed to commit a crime if he is 'ready and willing without persuasion' to commit the crime charged and 'awaiting any propitious opportunity to do so.'" *United States v. Salerno*, 66 F.3d 544, 547 (2d Cir. 1995) (internal quotation marks omitted). Predisposition may be shown by "(1) an existing course of criminal conduct similar to the crime for which [the defendant] is charged, (2) an already formed design on the part of the accused to commit the crime for which he is charged, or (3) a willingness to commit the crime for which he is charged as evidenced by the accused's ready response to the inducement." *Id.* (quoting *United States v. Valencia*, 645 F.2d 1158, 1167 (2d Cir. 1980)). "[A] lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision." *Brito v. United States*, No. 13-CR-589, 2017 WL 3142074, at *4 (S.D.N.Y. July 24, 2017) (Castel, J.) (internal quotation marks omitted).

In light of the record in this case, and given that an entrapment defense is "rarely successful," it was reasonable for Yang's counsel not to pursue an entrapment defense. *Brito*, 2017 WL 3142074, at *5; *Jimenez v. United States*, No. 10-CR-316, 2015 WL 5098075, at *6 (S.D.N.Y. Aug. 31, 2015) (Forrest, J.) ("the entrapment defense is risky and rarely successful."). The record reflects that Yang was engaged in an existing course of criminal conduct similar to the crime for which he was charged, and that Yang demonstrated a willingness to engage in the crime in response to the Government's alleged inducement. *Salerno*, 66 F.3d at 547. Among other evidence in the record, the DEA first became aware of Yang only because he had held himself out as an international money launderer with co-conspirators throughout the world. (PSR ¶¶ 10–11.) When approached by the undercover law enforcement officer regarding laundering narcotics proceeds, Yang stated that he had many clients involved in narcotics trafficking who wanted money moved, and that he could move the undercover law enforcement

10

officer's money for a fee.  (*Id.* ¶ 12.)  Shortly thereafter, Yang moved money on several occasions—less his fee—for the undercover agents.  (*Id.* ¶¶ 12–15.)  Yang's counsel acted reasonably in researching entrapment, discussing it with Yang, advising Yang that it would fail, and not pursuing the defense further.[6]  (Henry Aff. ¶¶ 33–43.)

## CONCLUSION

For the foregoing reasons, Yang's motion is DENIED.[7]  Because Yang has not made a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability.  *See* 28 U.S.C. § 2253.  Furthermore, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that an appeal from this Order would not be taken in good faith and thus Yang may not proceed *in forma pauperis* for any such appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).  The Clerk is respectfully directed to close the pending motion at ECF No. 84 and mail a copy of this Opinion and Order to Yang.

SO ORDERED.

Dated: New York, New York
       September 04, 2024

                                                  */s/ Kimba M. Wood*
                                                  Kimba M. Wood
                                                  United States District Judge

---

[6] For similar reasons, even if Yang's counsel's conduct was somehow deficient, Yang fails to show that he had been prejudiced by his attorney's failure to raise entrapment.

[7] To the extent the Court does not address any particular claim within Yang's papers, the Court has considered each claim, and considers each meritless.